Arthur T. BROCHE

v.

The UNITED STATES.

No. 299–61.

United States Court of Claims.

June 6, 1962.

James M. McCullough, New York City, for plaintiff. Leo J. McCullough and George H. Jelly, Washington, D. C., were on the briefs.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

DAVIS, Judge.

Plaintiff sues for increased disability retirement pay claimed to have been granted him, as a World War I emergency officer, by the Career Compensation Act of 1949, 63 Stat. 802, 818, 823–824, 37 U.S.C.A. § 231 et seq. The defendant has been paying plaintiff, as such retirement pay, 75 percent of the basic pay of a *first lieutenant* with over 14 years' service. His sole claim in this suit is that the 1949 Act entitles him to retirement pay on the basis of the rank of a *captain* (with the same service). The petition was filed on July 31, 1961, and the claim is necessarily restricted under 28 U.S. C. § 2501 to additional pay accruing within the six prior years, i. e., since July 31, 1955. The defense is that under the 1949 Act the plaintiff should continue to be paid on the basis of a first lieutenant's pay.

Both parties have moved for summary judgment and there is no dispute as to the material facts. Plaintiff served on active duty as a first lieutenant in the National Army from December 19, 1917, until February 28, 1919, when he was honorably discharged. This commission was a temporary one for the period of World War I. Tall v. United States, 79 Ct.Cl. 251, 261; Perkins v. United States, 116 Ct.Cl. 778, 784. Thereafter, on June 20, 1927, he accepted a permanent commission as a captain in the Coast Artillery Corps of the Officers' Reserve Corps which he continued to hold until 1934. In 1928, Congress passed the Act of May 24, 1928, 45 Stat. 735, creating the emergency officers' retired list of the Army

for World War I emergency (nonregular) officers, such as plaintiff, who had been disabled in line of duty during their wartime service and were rated at not less than 30 percent permanent disability. Effective June 1, 1928 (and while he held his reserve commission as a captain), plaintiff was placed on the list as a first lieutenant (his World War I rank) and he has remained on the list continuously.[1]

It is agreed that from 1928 to the Career Compensation Act of 1949 plaintiff was entitled only to retirement pay computed on the basis of the rank he held —first lieutenant—when he was discharged in World War I. Tall v. United States, supra; Perkins v. United States, supra. The Act of May 24, 1928, 45 Stat. 735, which first instituted the emergency officers' retired list, expressly provided that the eligible officers should be placed on the list "with the rank held by them when discharged from their commissioned service [in World War I]" and that they should receive "retired pay at the rate of 75 per centum of the pay to which they were entitled at the time of their discharge from their commissioned service" (with an exception not now pertinent). Subsequent legislation authorized computation of this retirement pay so as to take into account increases in the pay of the various ranks (see Perkins v. United States, supra, and Section 6 of the Act of June 29, 1946, 60 Stat. 343, 345*; see also Sections 411, 412, 511 of the Career Compensation Act of 1949, 63 Stat. 802, 823, 824, 829, 37 U.S.C.A. §§ 281, 282, 311), but for the

purposes of this retirement pay the rank remained the one the officer held "when discharged from [his] commissioned service" in World War I.

Plaintiff's contention is that this aspect of the computation of his retirement pay was changed in 1949 by the Career Compensation Act. Section 411 of that statute, 63 Stat. 802, 823, provided that former members of the uniformed services (among others) theretofore retired for physical disability (and receiving or entitled to receive retired or retirement pay)—including World War I emergency officers on the retired list—could elect to qualify for disability retirement pay under the retirement pay provisions of the new Act.[2] The relevant general retirement pay provision of the Career Compensation Act is Section 402(d), 63 Stat. 802, 818, 37 U.S.C.A. § 272(d), declaring that a member of the armed services retired for disability may elect to receive disability retirement pay computed by multiplying an amount equal to the monthly basic pay of the rank held *"at the time of his retirement"* (emphasis added) by the percentage of his physical disability.[3] There is no dispute that plaintiff was eligible to qualify under, and elect to be covered by, the provisions of the Career Compensation Act.

Plaintiff duly elected (on March 24, 1951) to qualify for disability retirement pay under these sections and now asserts that his rank "at the time of his retirement" was the grade of captain in the Officers' Reserve Corps which he held both at the time of the enactment of the Act

[1]. This court has previously considered claims of emergency officers placed on the retired list by the Act of May 24, 1928, in Tall v. United States, supra, and Perkins v. United States, supra.
\* Now 50 U.S.C.A. Appendix, § 456.

[2]. Section 411 provides in pertinent part: " * * * any member or former member of the uniformed services heretofore retired by reason of physical disability and now receiving or entitled to receive retired or retirement pay * * * may elect within the five-year period following the effective date of this title [October 1, 1949] * * * to qualify for disability retirement pay under the provisions of

this Act and, dependent on his qualification, shall be entitled to receive * * * the disability retirement severance pay prescribed in this title * * *."

[3]. Section 402(d) provides in pertinent part: " * * * a member of the uniformed services who is retired pursuant to the provisions of this title, shall be entitled to receive disability retirement pay computed, at his election, by multiplying an amount equal to the monthly basic pay of the rank, grade, or rating held by him * * * at the time of his retirement * * * by * * * the percentage of his physical disability * * * at the time of retirement."

of May 24, 1928, supra, and also when his name was placed on the emergency officers' retired list as of June 1, 1928. His claim is that he was retired, within the meaning of Section 402(d) of the Career Compensation Act, on the latter date, and that at that moment he was a Coast Artillery captain in the Officers' Reserve Corps. It follows, he says, that under the literal wording of Section 402 (d) of the 1949 Act his retirement pay should be calculated on the basis of a captain's pay rather than that of a first lieutenant (his rank when he left the service in World War I) and that the prior pay legislation applicable to retired officers in his class was, to that extent, superseded by the 1949 Act.

We cannot accept this reading of the Career Compensation Act because (a) it places far too much weight on the accidental happenstance that plaintiff held a post-World War I reserve commission as a captain at the time, in 1928, when Congress ordered that he be placed on the World War I emergency officers' retired list at his World War I rank; (b) it could lead to grave incongruities and inequities in the application of the Career Compensation Act to these World War I officers on the retired list; and (c) with respect to such officers, the words "rank, grade, or rating held * * * at the time of his retirement" in Section 402(d) of the Career Compensation Act can and do refer, in proper context, to the rank at the time of discharge from service in World War I with respect to which the officer was placed on the retired list.

Plaintiff's reserve commission as a captain had no relation at all to his being placed on the retired list in 1928. As the court held in Perkins v. United States, supra, 116 Ct.Cl. at 784, these emergency or nonregular officers had no rank or office after World War I by virtue of their temporary commissions. When plaintiff was commissioned in 1927 in the Officers' Reserve Corps "this was a new and unrelated service to his wartime service ex-

cept that he qualified for such appointment by reason of his former service" (ibid.). When Congress directed, a year later, that he be placed on a retired list, he was not retired (in any sense) from his reserve commission which he continued to hold until at least 1934. It was only his World War I service and commission which had any connection with the retired list established by the Act of May 24, 1928, supra; that Act did not require that the former member hold any rank or grade at the time of his placement on the list or acquire any new rank or grade in order to be continued on the list.[4] In sum, for the purposes of the 1928 legislation, plaintiff's 1927 reserve commission was as if it did not exist. In the absence of clear indication that Congress intended in 1949 to take account for the first time of this irrelevant rank we should not interpret the general phrase "rank * * * at the time of his retirement" in the Career Compensation Act of 1949 as including it.

Moreover, to give effect, under this general phrase, to a post-World War I commission which the officer happened to hold in 1928 could entail strange consequences. If the "time of his retirement" refers to 1928, as plaintiff contends, officers who held no rank or commission in that year would be unable to avail themselves of the elections contemplated by Sections 402(d) and 411 of the 1949 Act (supra, footnotes 2 and 3). Officers holding a lesser rank in 1928 than they had when discharged in World War I would also be disadvantaged, while officers, like plaintiff, who happened to have a higher reserve rank in 1928 than their World War I commission would reap a haphazard advantage unrelated to their wartime service or to the reasons they were placed and maintained on the emergency officers' retired list. And officers would be entitled only to the pay of the particular reserve grade they held at the moment they were placed on the retired list in 1928 even though they had a high-

4. The same was true of the 1933 and 1940 legislation relating to the emergency officers' retired list. Act of March 20, 1933, 48 Stat. 8, Sections 10 and 17; Act of July 15, 1940, 54 Stat. 760.

er reserve rank at an earlier or later time.

Neither our prior decisions nor the terms of the Career Compensation Act of 1949 [5] require us to put these considerations to one side and to reach the result urged by plaintiff. The court has ruled that under the 1949 Act officers holding both a temporary rank in which they were actually serving and also a higher permanent reserve rank at the time of their retirement (i. e., relief from active duty) can choose to have their retirement pay computed on the basis of the higher permanent rank despite the fact that they never served actively in that grade. Tracy v. United States, 142 F. Supp. 943, 136 Ct.Cl. 211; Lowell v. United States, 158 F.Supp. 704, 141 Ct.Cl. 111; Budd v. United States, 153 F.Supp. 712, 141 Ct.Cl. 123; see also Neri v. United States, 171 F.Supp. 940, 145 Ct. Cl. 537. But those were cases in which officers who were retired in normal course simultaneously held two ranks at the time they moved from active to retired status. In those circumstances, the court found affirmative indications in the Career Compensation Act, as well as in the subsequent codification of the laws relating to the armed services (P.L. 1028, 84th Cong., 2d Sess., 1956, 70A Stat. 105, Sec. 1372, 10 U.S.C. § 1372), that Congress intended to entitle the officer to compute his retired pay at the higher of the two ranks he was holding at the time he left active status and in which he was then serving.

Here we have a quite different situation. There was no retirement in normal course from active status in 1919 but merely a discharge from service; and the plaintiff held only the rank of first lieutenant when he left active duty. He did not attain his reserve rank of captain until some eight years later, in 1927, when he no longer had his World War I com-

mission and (so far as the record shows) was no longer in the service for any purpose. By the Act of May 24, 1928, supra, Congress did direct that he then be placed on a retired list for disabled World War I emergency officers, but, as we have pointed out, that had nothing to do with the reserve commission he happened to hold in 1928, but only with the wartime rank and commission from which he had been discharged. Whether or not the 1928 legislation be viewed as retiring plaintiff in the conventional sense,[6] there is no doubt that the "retirement" had reference solely to the earlier commission and rank. See Tall v. United States, supra, 79 Ct.Cl. at 260–262; Perkins v. United States, supra, 116 Ct.Cl. at 784, 786. The unrelated reserve commission was wholly unaffected and continued to exist, under its own separate statutory provisions, until it terminated.

Aside from the bare words "rank * * at the time of his retirement" on which plaintiff relies so heavily, the terms and structure of the Career Compensation Act do not suggest that, with respect to an officer on this retired list, account should now be taken of an unconnected grade held by him in 1928 when he was placed on the list. In view of the legislative background and other factors we have discussed, it is proper and preferable to construe the general phrase "rank * * at the time of his retirement" (primarily designed for the normal instance of the officer who passes directly from active to retired status without a break) as meaning, in cases like plaintiff's, the rank at which the officer was placed on the list, i. e., the rank from which he was discharged in World War I. This is the sole rank with respect to which he was to be treated as retired and therefore it is his "rank * * * * at the time of his retirement" within the meaning of

5. We have been directed to nothing in the legislative history of the 1949 Act supporting plaintiff's interpretation.

6. The defendant asserts that the 1928 Act was not a true retirement statute and that the pay allowed under that and suc-

ceeding legislation is in the nature of a pension rather than true retirement pay. The plaintiff, on the other hand, characterizes the 1928 statute (and its successors) as conventional retirement legislation.

Section 402(d) of the Career Compensation Act.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. The petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE, and WHITAKER, Judges, concur.