Charles M. BERKEY

v.

The UNITED STATES.

No. 171–65.

United States Court of Claims.
June 10, 1966.

John I. Heise, Jr., Washington, D. C., for plaintiff. Daniel F. Boone, Washington, D. C., of counsel.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

This case calls upon us to X-ray an opaque piece of legislation relating to veterans who die while institutionalized in federal facilities. The basic issue is whether Congress has forbidden the payment to plaintiff of the retirement pay accumulated by his late father, a retired Army officer, during the many years the father was an incompetent patient in a Veterans Administration hospital.

Plaintiff is the only child of Captain Charles M. Hurt, Jr., who entered the Veterans Administration Hospital in Murfreesboro, Tennessee, in October 1947, as an adjudicated incompetent. Captain Hurt remained a patient until he died intestate at the hospital on August 6, 1962. During that time, the captain was the beneficiary of about $19,000 in Army retirement pay which was withheld from him under the statute with which we shall be concerned. In August 1963 plaintiff made claim for this sum. This demand was refused[1] and plaintiff sues for the accumulated retirement pay. Both parties have moved for summary judgment and there is no factual dispute.

The controlling statute—38 U.S.C. § 3203, 72 Stat. 1234, entitled "Hospitalized veterans and estates of incompetent institutionalized veterans"—is set out in the Appendix.[2] It deals with the payment of compensation or retirement pay to certain veterans who are being cared for by the Veterans Administration in its

1. Apparently one of the grounds for denial was that plaintiff could no longer be considered a "child" of Captain Hurt since he had been adopted in Texas by Paul A. Berkey. This basis for rejection of the claim is untenable. Under Texas law, a child loses no rights of inheritance from the natural father by reason of adoption by another. Vernon's Texas Ann.Stat.Civ. article 46a. In this court defendant does not suggest denial of the claim on the ground that plaintiff is the natural son of Captain Hurt, adopted by another.

2. We use the version of the statute as it read after several amendments, so as to give the legislation in effect when Captain Hurt died in 1962.

institutions. Section 3203(a) (1) provides that, *if such a veteran has "neither wife, child, nor dependent parent"*, his compensation or retirement pay shall continue unabated for six months following his admission, but that after six months only one-half of such monies (if more than $30 per month) shall be paid to the veteran. Upon his discharge he is paid, in a lump sum, the amount by which his retirement pay has been reduced,[3] except that if he leaves against medical advice or as a result of disciplinary action he cannot obtain this lump sum until six months have elapsed. If the veteran dies while institutionalized or before payment of the lump sum, the money is to be paid (§ 3203(a) (2) (A)):

> First, to the spouse; second, if the decedent left no spouse, or if the spouse is dead at time of settlement, then to the children (without regard to their age or marital status) in equal parts; third, if no spouse or child, then to the dependent parents in equal parts.

If there is no surviving member of these classes, "no payment shall be made", except for expenses of burial or last sickness.

Obviously a problem is created by the seeming conflict between the basic provision for reduction and accumulation of retirement pay—which expressly applies, under § 3203(a) (1), only to veterans "having neither wife, child, nor dependent parent"—and the direction to pay the accumulated lump sum, if the veteran has not received it before death, to a spouse, child, or dependent parent. A man "having neither wife, child, nor dependent parent" can hardly be left with such relatives. Congress solved this dilemma by providing, first, that veterans subject to the reduction and accumulation of retirement pay "shall be deemed to be single and without dependents in the absence of satisfactory evidence to the contrary" (§ 3203(c)), and, second, that survivors within the specified classes have five years after the veteran's death to file claim for the accumulated lump sum (§ 3203(a) (2) (B)). Under these provisions, as they have been applied by the Veterans Administration, an institutionalized veteran is considered to have "neither wife, child, nor dependent parent" so long as affirmative proof of such status is not officially presented. On the veteran's death, the survivors have five years in which to offer "satisfactory evidence" of their relationship, and to claim the lump sum.[4] Many a wife, we are told, defers making such proof until after her husband's death so that the retirement pay given to him in the hospital will be halved and the remainder accumulated, safely, as a nest-egg which cannot be squandered or dissipated by the patient.

This is the system Congress has spelled out, in terms, for institutionalized veterans who are competent, e. g., those who are patients or inmates because they are physically ill or merely advanced in years. For the mentally incompetent the surface of the statute reads differently as to disposition of the lump sum upon the patient's death, and that difference gives rise to the defense here. There is reduction and accumulation of retirement pay in the case of incompetents as well as of competents, and this applies, again, only to a hospitalized veteran "having neither wife, child, nor dependent parent."[5] The general provisions relating

---

3. For convenience, and because this case relates only to retirement pay, we refer to retirement pay instead of "compensation or retirement pay."

4. Congress has also enacted other provisions relating to the estates of institutionalized veterans dying without heirs who make timely claim. See United States v. Stevens, 302 U.S. 623, 58 S.Ct. 388, 82 L.Ed. 484 (1938); United States v.

Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); Annot. 36 A.L.R.2d 725 (1954).

5. The Administrator of Veterans Affairs has discretion to pay "all or any part of the pension, compensation, or retirement pay payable on account of any incompetent veteran who is being furnished hospital treatment, institutional or domiciliary care" to the chief officer of the insti-

to institutionalized but competent veterans are likewise made applicable—including the scheme for distribution to survivors—except that the subsection on incompetents (38 U.S.C. § 3203(b) (1), 73 Stat. 298) adds:

> however, no payment of a lump sum herein authorized shall be made to the veteran until after the expiration of six months following a finding of competency and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

Read literally, this would bar payment of the accumulated lump sum to the survivors of an incompetent veteran, such as plaintiff's father, who dies in the hospital while still incompetent. Unlike the survivors of a tubercular veteran, the incompetent's close relatives would receive nothing. The Government insists that the statute must and should be read literally. Our inquiry is whether we are so constrained.

The major stumbling block to a literal reading is that the defendant has given us no reason, and none appears in the legislative history, why Congress would have wished to differentiate in this way —at least as to retirement pay—between the survivors of mentally incompetent veterans and those who were physically sick or merely old. If Captain Hurt had been hospitalized for tuberculosis or cancer, and had died in 1962 in the hospital of that disease, plaintiff would clearly be entitled to recover the lump sum consisting of the accumulated half of the captain's retirement pay which was with-

held during his long institutionalization —the veteran had no surviving wife and plaintiff, as the only son, proved his status and filed his claim within five years of his father's death. With competent veterans, sick or old, there is no instance under the specific wording of the statute in which a surviving son could not timely claim the accumulated lump sum (if it had not already been paid to the veteran).[6] There would never be a cutting-off, forfeiture, escheat, or lapse. Can it be than Congress, without giving any reason, meant to discriminate against the wives, children, and dependent parents of incompetents?

The legislative background of the statute does not give a clear or conclusive answer, but we think it suggests, quite strongly, that Congress did not intend to confine distribution of an incompetent veteran's accumulated *retirement pay* to those few instances in which the patient has survived a finding of competency by six months. We are concerned in this case only with accumulated retirement pay, not with other types of veterans' benefits, and we look to the history of these provisions with that type of payment specially in mind. The modern general system of reducing and accumulating retirement pay (and other compensation) began in 1946 when the Act of August 8, 1946, 60 Stat. 908, established the forerunner of present Section 3203.[7] Under that Act, which applied both to competent and to incompetent veterans institutionalized in Veterans Administration facilities, one major difference from the current pattern was that distribution

---

tution "to be properly accounted for by such chief officer and to be used for the benefit of the veteran." § 3203(b) (4).

6. If the veteran dies in the hospital, the survivor has the right to the money under the provision dealing with "the death of any veteran subject to the provisions of this section, while receiving hospital treatment, institutional or domiciliary care." If a veteran who leaves against medical advice or as the result of disciplinary action dies during the six months waiting-period, the child's right is covered by the phrase "or before payment of

any lump sum authorized herein." § 3203(a) (2) (A).

7. There were older statutes providing that the gratuitous compensation of incompetent veterans hospitalized in federal institutions would be retroactively increased if the patient became competent again (43 Stat. 619 (1924)) or discontinuing such gratuitous compensation (until the recovery of competency) when the veteran's estate from World War I war risk insurance equalled or exceeded $3,000 (46 Stat. 999 (1930)).

could be made, not only to wives, children, or dependent parents, but also to brothers and sisters (if no member of the prior classes survived). But that Act, like the present legislation, delayed payment of the lump sum to the competent veteran, himself, for six months if he left the hospital against medical advice or as a result of disciplinary action. With respect to incompetents, the 1946 statute incorporated the basic plan set up for competents, but also contained a proviso declaring that no payment of the lump sum should be made until after the expiration of six months following a finding of competency (§ (B)); the Act did not then add (as it does now): "and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable." Since the 1946 legislation specifically required the retirement pay of the incompetent to "be subject to the provisions" relating to the competent—which contained directions for distribution to relatives on the veteran's death—the provision for a six month's delay "following a finding of competency" could easily be read as equivalent to the six months wait for competent patients who were discharged against doctor's advice or on disciplinary grounds; just as in the case of competent patients, the lump sum would be paid, however, to the surviving relatives if an incompetent veteran died in the hospital or within six months of an adjudication of competency.[8]

The 1946 Act also contained an ambiguous stipulation that "[i]n any case where the estate of such incompetent veteran derived from any source equals or exceeds $1,500, further payments of such benefits * * * shall not be made until the estate is reduced to $500." The words "such benefits" could hark back, as a matter of grammar, to a prior reference in the paragraph on incompetents to "the pension, compensation, or retirement pay for such [incompetent] veteran", but we understand that this direction to withhold all payments which would bring the estate above $500 was not applied to ordinary retirement pay (involved here) which was apparently not treated as a gratuitous benefit like a pension.[9]

This Act of August 8, 1946, was carried forward, without relevant change, in the 1958 codification of Title 38 of the U.S.Code, on "Veterans' Benefits". Act of September 2, 1958, Public Law 85–857, 72 Stat. 1105, 1234–1235. The codification placed these reduction-and-accumulation provisions in Section 3203 (where they now appear). One clarification was the explicit excepting of retirement pay from the requirement to withhold "benefits" when the incompetent's estate exceeds $1,500 (§ (b) (2)). At the same time the codifiers appended to this particular provision a sentence which ordered that "[t]he amount which would be payable but for this subsection [relating to withholding where the incompetent's estate is more than $1,500] shall be paid to the veteran as provided for the lump sum in paragraph (1) of this subsection" [incorporating the provisions for distribution to competent patients, but with the additional proviso delaying payment until after the expiration of six months following a finding of competency], and then added the significant words: "but in the event of the veteran's death no part thereof shall be payable." This last tag would not affect retirement pay since that type of compensation was entirely excluded from this particular provision withholding pay-

---

8. We have no information as to how the Veterans Administration actually interpreted the six-month provision of the 1946 Act relating to incompetents.

9. Military retirement pay (except perhaps for World War I emergency officers) has generally not been considered a pension, grant, or gratuity, but as something the serviceman earns and has earned. See, e. g., Lemly v. United States, 75 F.Supp. 248, 109 Ct.Cl. 760 (1948); Gordon v. United States, 140 F.Supp. 263, 264, 134 Ct.Cl. 840, 843 (1956); Hostinsky v. United States, 292 F.2d 508, 511, 154 Ct.Cl. 443, 447 (1961). Cf., Johnson v. United States, 79 F.Supp. 208, 111 Ct.Cl. 750 (1948).

ments when the patient's estate is more than $1,500.

We see, then, that from the institution of the benefits-reduction system in 1946 through the recodification of 1958, accumulated *retirement pay* (as distinguished from gratuitous benefits) was payable, on the death of an incompetent veteran, to the relatives specified by Congress. If Captain Hurt had died in 1958, plaintiff, as his son, would have been entitled to demand the accumulated retirement pay upon the filing of a timely claim.[10] The immediate issue is whether Congress changed this in 1959.

The Act of August 7, 1959, Public Law 86–146, 73 Stat. 297, amended 38 U.S.C. § 3203 to read substantially as we have set it forth in the Appendix. The main change relevant here was to add the phrase—"and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable"—to the subsection dealing with the retirement pay (along with other benefits) of patients.[11] Did this addition mean that Congress now wished, in the case of incompetents, to "forfeit" accumulated retirement pay—which is not a gratuity (see footnote 9, supra)—and to bar a surviving wife or child from collecting it? Aside from the bare words of the Act, there is no such indication. The signs all point in the other direction. The 1959 Act (which also deals with other matters relating to incompetent veteran patients) seems concerned, as a whole, with the distribution of gratuitous benefits, and with their distribution to near

relatives. The first section amended another provision of Title 38 (§ 3202 (d)) to provide, generally, that on the death of a mentally incompetent or insane veteran all gratuitous benefits withheld from him and deposited in a trust fund (under other provisions of law) should not be paid to his personal representative but to the wife, children, or dependent parents, any unpaid balance reverting to the Treasury.[12] Another change made by the 1959 Act was to cut off, to some extent, brothers and sisters as a class of distributees and to confine payments to the immediate family plus dependent parents (this process was completed in 1962).

Similarly, the theme of the entire legislative history is that accumulated gratuitous benefits should be paid, after death, only to close relatives, not to remote or collateral kin. Both committee reports (H.Rept.No.303, 86th Cong. 1st Sess., and S.Rept.No.344, 86th Cong., 1st Sess., U.S.Code Congressional and Administrative News 1959, p. 2048) emphasized that the bill was designed to prevent the payment of gratuitous benefits for incompetent veterans, receiving care at public expense, from accumulating in excessive amounts and passing, on death, to relatives having no claim against the Government on account of the veteran's military service (i. e., relatives farther away than wives, children, and parents). This same notion runs throughout the debate in the House (105 Cong.Rec. 7320–7322),[13] and the short discussion in the Senate (105 Cong.

---

10. From the beginning of the reduction and accumulation system in 1946, Congress provided that for this purpose a "child" included adult as well as minor children—unlike the definition governing other Veterans Administration programs. See 60 Stat. 908, 909; 72 Stat. 1105, 1235 (§ 3203(a) (2) (A)).

11. As already indicated, the same phrase had been inserted in 1958 in the separate subsection eliminating gratuitous benefits where the incompetent's estate exceeded $1,500.

12. Section 6 of the Act of August 29, 1959, Public Law 86–211, 73 Stat. 432,

435 ("To modify the pension programs for veterans of World War I, World War II, and the Korean conflict, and their widows and children")—which followed closely upon the Act of August 7, 1959—drastically reduced *pensions* (a gratuitous benefit) payable to veterans institutionalized in Veterans Administration facilities.

13. See 105 Cong.Rec. 7321–7322 (Cong. Mitchell: "gratuities", "no close relatives", "extremely remote collateral heirs", "veterans and their immediate families", "remote, collateral heirs benefiting from the estate of an incompetent veteran who is being furnished hospital care at public

Rec. 14619) ("gratuitous benefits"). The stress is always on the double note that federal largess should not pass to collateral kin. On the other hand, there was no reference to accumulated retirement pay and no suggestion at all that such earned compensation would be lost to the wife or children if the incompetent died in the hospital or before recovering his sanity. We have found not one word in the legislative history making or implying that point, or giving any reason why Congress should or would have wished to deprive a child of his incompetent father's accumulated retirement pay while permitting the son of a sick-but-competent father to recover.[14]

The only support for that position lies in the literal terms of the 1959 amendment adding the words "and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable." Explicit Congressional language is not readily shunted aside (United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Flora v. United States, 362 U.S. 145, 150, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960)), but we have also been instructed "not to make a fortress out of the dictionary" (Cabell v. Markham, 148 F.2d 737, 739 (C.A.2, 1945), aff'd, 326 U.S. 404, 409, 66 S.Ct.

193, 90 L.Ed. 165 (1945), and "against the dangers of an approach to statutory construction which confines itself to the bare words of a statute" (Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962)). The history and policy of this statute, as we judge them, demand a departure from a literalness which has nothing else to recommend it. In the special context of the legislation (cf. International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 243, 72 S.Ct. 235, 96 L.Ed. 275 (1952)), the Congressional purpose is better reached by excluding retirement pay, at the least, from the "apparent absolute" (Markham v. Cabell, supra, 326 U.S. 404, at 409, 66 S.Ct. 193, 90 L.Ed. 165) of the broad prohibition on payments of accumulated lump sums to surviving relatives.[15] "It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892); National Labor Relations Board v. Fruit & Vegetable Packers, 377 U.S. 58, 72, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964). Since the Congress was so wholly concerned with gratuitous benefits and with cutting off

expense"; Cong. Saylor: "incompetent veteran who has no close relatives or dependents", "all of my comments apply to incompetent veterans who are being hospitalized at public expense and who have neither wife, child, nor dependent parent", "we take care of the wives, children, and dependent parents. Other people are outside of the scope of the veterans' benefit laws").

14. So far as we are informed, there is no significant difference in the charges made in Veterans Administration facilities for veterans who are sick or old, but competent, and those who are incompetent.

The 1959 Act retained the provision barring accumulation of a patient's estate beyond $1,500, but also continued to restrict that provision to "further payments of pension, compensation, or emergency officers' retirement pay"—*not* including normal retirement pay. (Emergency officers' retirement pay (for World War I

officers) has long been treated separately as more in the nature of a gratuity. Cf. Broche v. United States, 303 F.2d 939, 157 Ct.Cl. 784 (1962); McGrath v. United States, 303 F.2d 943, 157 Ct.Cl. 791 (1962)). The Act also provided, for the first time, that amounts withheld from the veteran under the $1,500 limitation might be apportioned by the Veterans Administration and paid to dependent parents on the basis of need—but this permission was confined to the gratuitous benefits covered by the $1,500 limitation and did not include normal retirement pay.

15. We do not decide whether the distribution of accumulations of *gratuitous* benefits is precluded in the case of incompetent inmates (though not of competent ones). That question is not involved here, and there are reasons, though they may not ultimately prevail, for distinguishing between accumulations of gratuitous benefits and of retirement pay.

collateral relatives from such grants, we do not believe that it also intended to bar the immediate family from accumulated retirement pay.

■■ We are prodded to this conclusion by the consequences of reading the 1959 Act to declare that plaintiff cannot recover his father's accumulation. As we have indicated (see especially footnote 9, supra), military retirement pay is not a gratuity or mere pension. At the passage of the 1959 Act, Captain Hurt had long been retired and receiving retirement pay, part of which was being accumulated for him by the Veterans' Administration. There is a grave question whether Congress could validly deprive him or his son of the retirement pay already accumulated by 1959, and there is even a question whether Congress could reduce or abolish that pay, for Captain Hurt who was already retired, with respect to the period following the 1959 Act. Cf. Steinberg v. United States, 163 F.Supp. 590, 592–93, 594–96, 143 Ct.Cl. 1, 7–8, 9–13 (opinions of Jones, C. J., and Whitaker, J.) (1958); Nordstrom v. United States, 342 F.2d 55, 60, 169 Ct.Cl. 632, 639 (1965); Rafferty v. United States, 210 F.2d 934, 936 (C.A.3, 1954). We can properly take account of these substantial constitutional issues, which the Government's interpretation would immediately present, and read the statute so as to by-pass them. Cf. Guessefeldt v. McGrath, 342 U.S. 308, 317–319, 72 S.Ct. 338, 96 L.Ed. 342 (1952). Congress, we can assume, would not have wanted to thrust into the routine legislation which was the 1959 Act a sharp constitutional barb. In the same way, the accepted principle decrying forfeitures justifies us in thinking that Congress would not have desired to cut off the immediate family of an institutionalized incompetent veteran from the accumulated residue of his retirement pay. "Considering that confiscation is not easily to be assumed, a construction that avoids it and is not barred by a fair reading of the legislation is invited." Guessefeldt v. McGrath, supra, 342 U.S. at 319, 72 S.Ct.

at 344. Cf. Farmers & Mechanics Nat'l Bank v. Dearing, 91 U.S. 29, 35, 23 L. Ed. 196 (1875); United States v. One Ford Coach, 307 U.S. 219, 226 (1939); De Sylva v. Ballentine, 351 U.S. 570, 579, 76 S.Ct. 974, 100 L.Ed. 1415 (1956).

For these reasons, the defendant's motion for summary judgment is denied and plaintiff's cross-motion is granted. He is entitled to recover and judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c).

APPENDIX

Section 3203 of Title 38 of the United States Code, as amended by the Act of August 7, 1959, 73 Stat. 297, by the Act of August 29, 1959, 73 Stat. 432, 434–435, and by the Act of July 25, 1962, 76 Stat. 208, provides:

*Hospitalized veterans and estates of incompetent institutionalized veterans*

(a) (1) Where any veteran having neither wife, child, nor dependent parent is being furnished hospital treatment, institutional or domiciliary care by the Veterans' Administration any compensation or retirement pay otherwise payable shall continue without reduction until the first day of the seventh calendar month following the month of admission of such veteran for treatment or care. If treatment or care extends beyond that period, the compensation or retirement pay, if $30 per month or less, shall continue without reduction, but if greater than $30 per month, the compensation or retirement pay shall not exceed 50 per centum of the amount otherwise payable or $30 per month, whichever is the greater. If such veteran is discharged from such treatment or care upon certification by the officer in charge of the hospital, institution, or home, that maximum benefits have been received or that release is approved, he shall be paid in a lump sum such additional amount as would equal the total sum by which his compensation or retire-

ment pay has been reduced under this section. If treatment or care is terminated by the veteran against medical advice or as the result of disciplinary action the amount by which any compensation or retirement pay is reduced hereunder, shall be paid to him at the expiration of six months after such termination or, in the event of his prior death, as provided in paragraph (2) of this subsection; and the compensation or retirement pay of any veteran leaving against medical advice or as the result of disciplinary action shall, upon a succeeding readmission for treatment or care, be subject to reduction, as herein provided, from the date of such readmission, but if such subsequent treatment or care is continued until discharged therefrom upon certification, by the officer in charge of the hospital, institution, or home in which treatment or care was furnished, that maximum benefits have been received or that release is approved, the veteran shall be paid in a lump sum such additional amount as would equal the total sum by which his compensation or retirement pay has been reduced under this section after such readmission.

(2) (A) In the event of the death of any veteran subject to the provisions of this section, while receiving hospital treatment, institutional or domiciliary care, or before payment of any lump sum authorized herein, such lump sum shall be paid in the following order of precedence: First, to the spouse; second, if the decedent left no spouse, or if the spouse is dead at time of settlement, then to the children (without regard to their age or marital status) in equal parts; third, if no spouse or child, then to the dependent parents in equal parts. If there are no persons in the classes named to whom payment may be made under this paragraph, no payment shall be made, except there may be paid only so much of the lump sum as may be necessary to reimburse a person who bore the expenses of last sickness or burial, but no part of the lump sum shall be used to reimburse any political subdivision of the United States for expenses incurred in the last sickness or burial of such veteran.

(B) No payment shall be made under the last two sentences of section 3202(d) of this title or under this paragraph (2) unless claim therefor is filed with the Veterans' Administration within five years after the death of the veteran, except that, if any person so entitled under the last two sentences of section 3202(d) of this title or under this paragraph is under legal disability at the time of death of the veteran, such five-year period of limitation shall run from the termination or removal of the legal disability.

(b) (1) Where any veteran having neither wife, child, nor dependent parent is being furnished hospital treatment, institutional or domiciliary care by the Veterans' Administration, and is rated by the Veterans' Administration in accordance with regulations as being incompetent by reason of mental illness, the compensation or retirement pay of such veteran shall be subject to the provisions of subsection (a) of this section; however, no payment of a lump sum herein authorized shall be made to the veteran until after the expiration of six months following a finding of competency and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

(2) In any case in which such an incompetent veteran having neither wife nor child is being furnished hospital treatment, institutional or domiciliary care without charge or otherwise by the United States, or any political subdivision thereof, and his estate from any source equals or exceeds $1,500, further payments of pension, compensation, or emergency officers' retirement pay shall not be made until the estate is reduced to $500. The amount which would be payable but for this paragraph shall be paid to the veteran as provided for the lump sum in para-

graph (1) of this subsection, but in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

(3) Where any benefit is discontinued by reason of paragraph (2) of this subsection the Administrator may nevertheless apportion and pay to the dependent parents of the veteran on the basis of need all or any part of the benefit which would otherwise be payable to or for such incompetent veteran. Paragraph (2) of this subsection shall not prevent the payment, out of any remaining amounts discontinued under that paragraph on account of any veteran of so much of his pension, compensation, or retirement pay as equals the amount charged to the veteran for his current care and maintenance in the institution in which treatment or care is furnished him, but not more than the amount determined by the Administrator to be the proper charge as fixed by any applicable statute or valid administrative regulation.

(4) All or any part of the pension, compensation, or retirement pay payable on account of any incompetent veteran who is being furnished hospital treatment, institutional or domiciliary care may, in the discretion of the Administrator, be paid to the chief officer of the institution wherein the veteran is being furnished such treatment or care, to be properly accounted for by such chief officer and to be used for the benefit of the veteran.

(c) Any veteran subject to the provisions of subsection (a) or (b) shall be deemed to be single and without dependents in the absence of satisfactory evidence to the contrary. In no event shall increased compensation, pension, or retirement pay of such veteran be granted for any period more than one year before receipt of satisfactory evidence showing such veteran has a wife, child, or dependent parent.

(d) (1) Where any veteran is being furnished hospital treatment, institutional, or domiciliary care by the Veterans' Administration, no pension in excess of $30 per month shall be paid to or for the veteran for any period after (a) the end of the second full calendar month following the month of admission for treatment or care or (b) readmission for treatment or care within six months following termination of a period of treatment or care of not less than two full calendar months.

(2) Where the payment of pension to any veteran is subject to the provisions of paragraph (1) of this subsection the Administrator may apportion and pay to his wife or children the balance of the pension which the veteran would receive but for such paragraph (1).

(e) Notwithstanding any other provision of this section or any other provision of law, no reduction shall be made in the pension, compensation, or retirement pay of any veteran for any part of the period during which he is furnished hospital treatment, or institutional or domiciliary care, for Hansen's disease, by the United States or any political subdivision thereof.