**L'ENFANT PLAZA PROPERTIES, INC.**

v.

**The UNITED STATES.**

**No. 67–75.**

United States Court of Claims.

May 5, 1982.

---

22. ASPR § 1.308, *supra* note 11.

William Daniel Sullivan, Washington, D. C., for plaintiff. Warren K. Kaplan, Washington, D. C., attorney of record. Melrod, Redman & Gartlan, Washington, D. C., of counsel.

Randall B. Weill, Charlottesville, Va., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and KASHIWA, Judge.

## OPINION

FRIEDMAN, Chief Judge:

This complex breach of contract case is before us on the parties' exceptions to Trial Judge Schwartz's recommended decision. The plaintiff seeks delay damages resulting from (1) the government's failure timely to complete work it was required to perform and which was related to the plaintiff's work, and (2) the government's unreasonable delays in approving the plaintiff's construction plans. In a lengthy opinion the trial judge ruled upon each of the claims, upholding some (in whole or in part) and rejecting others. Except for the parking area claim, one of the plaintiff's second category of claims, which is the subject of this opinion, we agree with the trial judge's determinations and findings and adopt them. The recommended opinion and findings have been furnished to the parties, and they are not reprinted.

## I.

L'Enfant Plaza (the "Complex") is located in Washington, D. C., between Independence and Maine Avenues from north to south, and between Seventh and Twelfth Streets from east to west. It was built, mostly in the 1960's, as part of a general Urban Renewal Program in Southwest Washington. The plaintiff is the successor to various corporations that participated in the development of the Complex, and we will refer to it instead of to its predecessors. In November 1965, the plaintiff entered into five long-term leases on the property with the District of Columbia Redevelopment Land Agency ("Agency"). The court, in a prior ruling in this case, held the Agency to be a federal instrumentality for purposes of Tucker Act jurisdiction. *L'Enfant Plaza Properties, Inc. v. United States*, 209 Ct.Cl. 727 (1976).

The plaintiff agreed in the leases to erect a building on each piece of land and to provide 2,000 off-street parking spaces. The five buildings are now the North, South, East, West and Centre Buildings. The Centre Building is known also as the Plaza Building or the Tenth Street Plaza. Although there were five leases, the Complex was to be designed and built as a single, integrated entity. The Agency, in turn, agreed to build a mall, on which part of Tenth Street now runs, and a small park called the Overlook. The Agency agreed further to improve nearby streets.

## II.

A. The entire Urban Renewal Project was governed by the Urban Renewal Plan ("Plan"). A part of this Plan was the Land Use map, designating all the land in the area according to its permitted uses, e.g., parking, housing, commercial.

When the plans for L'Enfant Plaza were prepared initially, before the plaintiff was involved, the District of Columbia Motor Vehicle Parking Authority ("Parking Authority") intended to construct and operate a parking garage underneath the Tenth Street Plaza. The land was designated as a public thoroughfare on the Land Use map.

The lots on which the North, South, East and West Buildings were to be built were designated "Limited First Commercial."

At that time, section H.4.c.(5)(b) of the Plan provided: "Not less than two thousand (2,000) parking spaces shall be provided under the Tenth Street Mall and L'Enfant Plaza." Section H.8.(2)(c), applicable to all areas designated for parking on the Land Use map, required all parking spaces in those areas to be 9 feet wide. Section H.3.e. contained several requirements for off-street parking in residential sections.

In 1962, Congress prohibited the Parking Authority from constructing new parking facilities. Plans were changed then so that the redeveloper would become the lessee on the Centre Building lot and would provide the parking spaces. As part of the new plans, the garage was to be built under several buildings, not just the Centre. These plans called for 27′ 9″ bays in the garages. The width of the bays included the supporting columns, and three 9-feet parking spaces could not quite fit.

An amendment to the Plan, the fifth amendment, changed section H.4.c.(5) to read:

(a) Not less than two thousand (2,000) off-street parking spaces shall be provided in the Plaza area.

(b) Off-street parking shall be located
(i) In the main building served by such parking, or
(ii) In a sub-surface garage below the level of the main floor of the main building served by such parking, or
(iii) In a garage located under the 10th Street Plaza, subject to the requirements of Section H.8. [We refer to the last phrase beginning with "subject to," as the "requirements provision."]

At about this time, the land for the Centre Building was redesignated on the Land Use map for parking. Section H.8.a.(2) required parking spaces in areas designated for parking to be 9 feet wide and added the following sentence: "The size of spaces and aisles hereby required may be reduced in parking structures where the Agency finds that,

because of the use of mechanical parking devices, attended parking, or for other reasons, such reduction will not result in the provision of inadequate accommodation." Section H.8.b.(2)(a) limited the use of the Tenth Street Plaza to an underground garage and an arcade level of shops.

The next amendment to the Plan, the sixth amendment, was adopted to make what were characterized as purely editorial changes. This amendment added clause (iv) to section H.4.c.(5)(b): "Off-street parking areas shall be subject to the controls set forth in Section H.9." Section H.9. adopted virtually all the provisions of section H.3.e. relating to residential areas, including a requirement that parking spaces be 9 feet wide. Unlike section H.8., section H.9. contained no waiver provision.

B. The first garage built was the one under the Centre Building, and it extends beneath both the North and South Buildings. In 1965, the question was raised whether the waiver provision of section H.8. applied to the parking spaces beneath the North and South Buildings, because the land there was not designated for parking. The Agency decided it did. The Agency said the garage was

> designed as an integrated structural complex and will be so constructed.... Therefore the parking requirement should be uniform throughout.... It should be noted also that the Urban Renewal Plan was modified so that the L'Enfant Plaza parking could be so modified and it is obvious from the language of H(4)(C)(5) that the 2,000 [spaces] required to serve the L'Enfant Plaza structures are to be located in the Plaza area and their specific location can be varied. The provision for the waiver in parking sites was introduced into the Urban Renewal Plan as a part of the Fifth Revision for the express purpose of permitting a lesser requirement in the L'Enfant Plaza complex. The entire garage is a single unit, designed to the same module, and it was the intent of those involved in the plan revision that the waiver should apply to the entire garage. Inadvertently the intention and application of the

plan were not made clear at the time to show the intention that the Mall-Plaza parking can ... be adjusted.... [T]he development of these three units on a single lot, as a single building unit complex[,] would be consistent with the intent and spirit of the Urban Renewal Plan and ... a single set of criteria should apply to the entire garage.

In November, the Agency approved the plaintiff's plan for the garage, which included the 27' 9" bays.

In March of 1966, the Agency told the District of Columbia Department of Licenses and Inspections that section H.8., not section H.9., applied to the garage under the North and South Buildings.

In August, the plaintiff submitted its plans for the West Building to the Agency. The West Building is separated from the other buildings by the Tenth Street Mall, and the garage under the West Building is separated from the garage under the North, Centre, and South Buildings by lower Tenth Street. Since, as the trial judge noted, see infra at 9, the goal for the Complex was to construct a unified project, with all the parts being similar, the plans for the West Building were similar to those of earlier buildings and the plans for the garage were based on the 27' 9" bay model.

In September, however, the Agency rejected the plans because, among other reasons, the parking spaces were too narrow. The Agency said that section H.9. applied and that the requirement for 9-feet parking spaces therefore was unwaivable. On October 31, the plaintiff stated it had corrected all deficiencies in the plans except the parking space widths.

In February 1967, the Agency suggested that the plaintiff request an amendment to the Plan allowing waiver of the width requirement. The plaintiff submitted such a request to the Agency in March. In July, the Agency submitted the request to the National Capital Planning Commission ("Planning Commission"), which approved it. In November, the District of Columbia Council adopted the amendment. A staff

member of the Agency suggested informing the plaintiff of the amendment, but the Agency did not do so. On March 14, 1968, the plaintiff requested information on the amendment's status, and on March 25, was told of its approval.

The plaintiff claims that the Agency's rejection of the West Building plans was improper, and it seeks delay damages from October 31, 1966, when its other defects allegedly were corrected, to March 14, 1968, when it sought information from the Agency. We hold it is entitled to such damages.

### III.

In section 202(a) of the West Building lease, the Agency agreed not to withhold approval of the plaintiff's plans unreasonably. The dispute turns on whether section H.8. or section H.9. applied to the West Building parking garage and whether the initial rejection of the plans was reasonable.

A. Although both sections require 9-feet parking spaces, only section H.8., but not section H.9., permits a waiver. Section H.8. applies only to areas designated for parking, and section H.9. applies to all off-street parking. Section H.4.c.(5) covers parking in Limited First Commercial areas in L'Enfant Plaza. It subjects all off-street parking to section H.9., and also makes parking under the Tenth Street Plaza (which, as noted, also is known as the Centre Building, and which was designated for parking on the Land Use map), "subject to the requirements of Section H.8."

█ Construed literally, the latter provision seems to subject to those requirements only parking in the Centre Building. The integrated design of the Complex and the history of the Plan, however, indicate that all parking was to be subject to the same requirements. We therefore hold that the "requirements of section H.8." applied to the West Building parking garage, and that the Agency erred in concluding that it could not waive the width provision for that garage.

The plaintiff argues that the history and purpose of the waiver provision indicate that it was intended to cover all of section H.4.c.(5)(b), not just the Centre Building. It says that since section H.8. already covered the Centre Building parking, the requirements provision in clause (iii) is redundant unless it applies to all parking. The government argues that the provision is a specific exception from the requirements of section H.9. for the Centre Building parking. That argument fails, however, because the phrase was in the Plan before section H.9. was, and therefore must have had another purpose.

Just as in the case of statutes, it is appropriate to consider the history of the Plan to determine its meaning. "[N]o matter how clear the statute may appear on its face, there is certainly no rule of law forbidding a court from resorting to the purpose and legislative history of a statute to determine the intent of Congress in enacting the statute." *Ocean Drilling & Exploration Co. v. United States*, 220 Ct.Cl. 395, 403, 600 F.2d 1343, 1347 (1979) (citations omitted).

The initial plans for parking called for one garage under only the Centre Building, with 9-feet wide parking spaces. The plans changed, however, so that the redeveloper, not the Parking Authority, would do the construction. The redeveloper submitted plans to place the garage under more than one building and to use spaces slightly narrower than 9 feet. The Agency knew at the time that the redeveloper planned to put some of the 2,000 required spaces under the West Building.

At the hearings before the Planning Commission preceding the adoption of the fifth amendment, a staff member of the Commission explained that the amendment was needed to adapt the Plan to the redeveloper's proposals. He said that, "[A]t this time the minimum space requirements do not apply in the Plaza Area," but rather "[t]he minimum requirements are just in the residential section for residential parking and this [amendment] would just apply to any parking lot where you have a commercial parking arrangement."

The specifics of the parking plans were discussed, including the size of the spaces

and the fact that "the Redeveloper has agreed to build the parking garage under the entire development." He explained that the sentence in section H.8. giving the Agency the waiver authority was intended to "apply . . . entirely to commercial parking developments." The waiver authority was not limited to the garage under the Centre Building, but was to be used in "special circumstances in *garages* . . . and where there are collumns [sic] to consider." (Emphasis added.)

The Agency indicated that the fifth amendment would impose additional requirements on parking in the Complex, not weaken existing requirements. No one indicated or contended that the requirements of section H.3.e., which governed residential parking, applied and nothing in that section indicates it applied to commercial parking. Therefore, the only way the requirements of section H.8. could apply to all the Complex parking was by virtue of the requirements provision.

At the hearings before the District of Columbia Board of Commissioners preceding the adoption of the sixth amendment, however, the Agency changed its position. It said that the source of the width requirement in section H.9.a. was the identical requirement in section H.3.e.(2). The Agency called it "a purely editorial change" and said it was just putting the requirements for all off-street parking in the Urban Renewal Area in a separate section. The same staff member who had testified at the earlier hearings said, "In the previously approved plan, the standards for design and operation of off-street parking . . . spaces were contained in the section which established the building requirements for residential uses, although they pertained to all uses permitted by the plan." No new requirements were being added.

Two years after the adoption of the sixth amendment, the Agency, in waiving the 9-feet width requirement for spaces in the portions of the garage under the North and South Buildings, recognized that the "integrated structural complex" and single design of the North, South and Centre Build-

ings' garage required that "the parking requirement should be uniform throughout" and that despite its seemingly limited reach, section H.8. applied to the whole garage. In granting the waiver, the Agency relied heavily on the intention of the planners and the design and purpose of the Plan. It stated: "The provision for the waiver . . . was introduced . . . for the express purpose of permitting a lesser requirement in the L'Enfant Plaza complex. The entire garage is a single unit, designed to the same module, and it was the intent . . . that the waiver should apply to the entire garage."

The same intentions and purposes applied to the West Building garage, and called for the same result. As the trial judge found, "[T]he entire Plaza project, including the West Building, was to be treated as a single entity, separated only by staged construction and financing." The Agency knew this and relied on it in concluding that it could and should waive the width requirements for one garage. We believe the evident intention of the Plan was to apply the same parking requirements throughout "the L'Enfant Plaza complex."

■ The purpose of the fifth amendment was to make the waiver provision applicable to all L'Enfant Plaza parking. We hold that the requirements provision of section H.4.c.(5)(b)(iii) applies to all of section H.4.c.(5)(b), and that section H.8. and not section H.9. controlled the parking requirements in the West Building garage. The spirit, not the letter, of the Plan must prevail. *Muniz v. Hoffman,* 422 U.S. 454, 469, 95 S.Ct. 2178, 2187, 45 L.Ed.2d 319 (1975); *Berkey v. United States,* 176 Ct.Cl. 1, 11–12, 361 F.2d 983, 989 (1966). Since section H.8. includes not only the width requirement but also the waiver provision, the "requirements" of that section to which section H.4.c.(5)(b) subjects all garage parking includes the authority to waive that requirement.

The history of the sixth amendment shows that it was not intended to make substantive changes in the Plan's requirements. Our interpretation of section H.9.a. does not read that provision out of the Plan,

as the government contends, because it still applies to other off-street parking in the Urban Renewal Area. It was not, however, intended to apply to parking spaces governed by section H.8. We hold that the Agency had the authority to waive the width limitation for the West Building garage parking spaces.

B. The trial judge implied and the government argues that the government is not liable because the Agency's interpretation was reasonable. However uncertain one might be upon reading the Plan today, the development of its provisions indicates what the interrelationship of the sections was intended to be. The Agency was familiar with, and indeed was a party to and played an important part in, that development. Less than a year before it initially rejected the West Building plans, it had interpreted the Plan as we interpret it today.

 The concept of a single, unified plan for the whole Plaza was no less important than was treating the first garage as a single entity. In light of its experience and familiarity with the history and prior implementation of the Plan, the Agency should have recognized that it had the power to waive the 9-feet requirement for the West Building garage. Its failure to do so was unreasonable. Since the Agency does not deny that it would have granted a waiver if it had believed it could have done so—as it had done earlier for the North, Centre and South Buildings and as it did for the West Building after the Plan was amended—the government is liable for the damage the plaintiff suffered from the Agency's delay in granting the waiver.

### IV.

The government argues that it is not liable for the delay after the approval by the D. C. Council of the amendment of the Plan authorizing the waiver. The government says that the approval was a matter of public record and that the plaintiff had the same opportunity as the Agency to know of it.

 The plaintiff, at the Agency's suggestion, submitted a request for an amendment to the Agency. Although the plaintiff could have proposed the amendment to the Planning Commission, the Agency took it upon itself to propose the amendment for the plaintiff. The Agency was the conduit for communication with the Planning Commission and the D. C. Council. By undertaking in these circumstances to transmit the proposed amendment, the Agency had the responsibility to inform the plaintiff of the proposal's success. Its failure to do so was unreasonable. The failure to inform was part of the unreasonable delay in approving the West Building plans, for which the plaintiff is entitled to compensation under the lease.

### CONCLUSION

Judgment is entered for the plaintiff in accordance with this opinion and with those parts of the trial judge's conclusion which we adopt. The case is remanded to the Trial Division for a determination of damages under Rule 131(c)(2).