**UNITED STATES of America**

v.

**Joseph J. MACIOCI, as Guardian of Frank T. Rose.**

**Civ. A. No. 4701.**

United States District Court,
D. Rhode Island.

July 6, 1972.

Lincoln C. Almond, U. S. Atty., Rhode Island, Constance L. Messore, Asst. U. S. Atty., Providence, R. I., for plaintiff.

Allegra E. Munson, of Macioci, Grimm & Hall, Newport, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This action is before the court for decision on the pleadings, memoranda of law and a stipulation of facts. The United States seeks to recover alleged overpayments of Veterans Administration compensation benefits from the defendant, guardian of Frank T. Rose, an incompetent veteran. The pleadings and joint stipulation of facts leaving no genuine issue as to any material fact, the matter is properly before the court on the plaintiff's motion for summary judgment. It will be so treated.

The stipulated facts establish that the defendant is attorney-guardian of Frank T. Rose, an incompetent veteran who has neither wife nor child. On December 19, 1965, at a time when his estate exceeded $1500, Rose was admitted to the Rhode Island Veterans Home, Bristol, where he began receiving institutional care without charge. The defendant, in his capacity as guardian, received Veterans Administration benefits on Rose's behalf at the monthly rate of $450 from December 9, 1965 through December 31, 1968, and at the monthly rate of $550 from January 1, 1969 through May 31, 1969. Throughout the period of the above payments, Rose remained a patient at the Rhode Island Veterans Home. On June 16, 1969 the defendant was notified that, pursuant to a determination that Rose's veterans' benefits were unauthorized by law, said benefits had been discontinued retroactively to December 9, 1965. The defendant subsequently refused a demand by the United States for repayment of $19,280, the alleged total amount of payments received by the defendant on or after December 9, 1965.

The Government's claim to recovery is based upon 38 U.S.C. Sec. 3203(b) (2), which provides in part as follows:

"In any case in which an incompetent veteran having neither wife nor child is being furnished hospital treatment, institutional or domiciliary care without charge or otherwise by the United States, or any political subdivision thereof, and his estate from any source equals or exceeds $1,500, further payments of pension, compensation or emergency officer's retirement pay shall not be made until the estate is reduced to $500."

No specific statutory authority authorizes recovery of payments made contra to the prohibition of § 3203(b) (2); however, no such authority is necessary.

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid. 'No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute,' United States v. Bank of the Metropolis, 15 Pet. 377, 401, [40 U.S. 377] 10 L.Ed. 774."

United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938).

Recovery of overpayment of Veterans Administration benefits can be waived by the Administrator pursuant to 38 U.S.C. § 3102(a):

"There shall be no recovery of payments or overpayments of any benefits (except servicemen's indemnity) under any of the laws administered by the Veterans Administration from any person who, in the judgment of the Administrator, is without fault on his part, and where, in the judgment of the Administrator, such recovery would defeat the purpose of benefits otherwise authorized or would be against equity and good conscience."

From the terms of § 3102(a) it appears that one from whom recovery of benefits is sought can make a binding claim of waiver only by showing an affirmative exercise of "the judgment of the Administrator." No such showing has been made here, and I find that the Government has not waived whatever

right it may have to recover from the defendant. See United States v. Rohde (D.So.Dak.1960), 189 F.Supp. 842.

■ The first of the defendant's two principal arguments in defense of the Government's claim is that 38 U.S.C. § 3203(b) (2) does not apply to the facts of this case, in that the institutional care received by Frank T. Rose from December 9, 1965 through May 31, 1969 was not furnished by "the United States, or any political subdivision thereof." The defendant argues extensively in support of the proposition that the Rhode Island Veterans Home is not a "political subdivision" of the United States. Although it is undisputed that in most instances and for most purposes a veterans' home cannot be considered a political subdivision of the United States, the court finds the defendant's argument misdirected. The Rhode Island Veterans Home is managed, controlled and funded by the State of Rhode Island, pursuant to the provisions of §§ 30–17–1 and 30–24–1 through 30–24–10, Gen.Laws R.I.1956, as amended.[1] Hospitalization and care provided at the Rhode Island Veterans Home are "furnished" by the State of Rhode Island through the Veterans Home, and the State of Rhode Island is indisputably a political subdivision of the United States. I find that Frank T. Rose was, from December 9, 1965 through May 31, 1969, an "incompetent veteran . . . being furnished hospital treatment, institutional or domiciliary care without charge or otherwise by the United States or (a) political subdivision thereof."

The defendant's second argument is an attack on the constitutionality of 38 U.S.C. § 3203(b) (2). Defendant claims that the classifications established by §

3203(b) (2) are "arbitrary and capricious," and that the withholding of benefits from Frank T. Rose as an incompetent veteran "having neither wife nor child," and whose "estate . . . exceeds $1500," is a deprivation of property without due process of law.

■ As the Government correctly observes, recipients of Veterans' benefits have no vested right thereto.

"Pensions, compensation allowances and privileges are gratuities. They involve no agreement of parties, and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress."

Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

"[V]eterans' benefits are gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under such conditions as Congress may impose."

Milliken v. Gleason (1st Cir. 1964) 332 F.2d 122, cert. denied 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965).

■ The fact that payments made pursuant to an Act of Congress are characterized as "gratuities" does not totally immunize the Act from scrutiny under the Fifth Amendment. The interest of a recipient of such payments is "of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause." Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). However, the scope of protection is limited:

"Particularly when we deal with a withholding of a noncontractual bene-

---

1. Sec. 30–24–1:
   "The management and control of the Rhode Island veterans' home, established in this state for those men who served in the army or navy of the United States in the war of the rebellion and were honorably discharged therefrom, who by reason of wounds, disease, old age, or other infirmities, are unable to earn their liv-

ing and have no adequate means of support, shall be in the director of social welfare and the assistant director in charge of community services."
   Sec. 30–17–1:
   "The general assembly shall annually appropriate such sums as they may deem necessary for the support of the veterans' home in the town of Bristol . . . ."

fit under a social welfare program . . ., we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

Flemming v. Nestor, supra, 363 U.S. at 611, 80 S.Ct. at 1373.

"If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment."

Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

Although the classifications embodied in 38 U.S.C. § 3203(b) (2) are not of recent origin[2], and evidence of original legislative intent is not readily available, a reading of § 3203(b) (2) in the light of the general purposes of Title 38 provides an insight into the rationale of the classifications.

One of the obvious purposes of Title 38 is that, under appropriate circumstances, the benefits authorized therein be provided to needy veterans and their immediate dependents. A corollary of this purpose is that compensation should not be paid where there is little likelihood that it will ultimately benefit an eligible veteran or his dependents. Section 3203(b) (2) envisions such a situation; it recognizes that an incompetent veteran whose basic needs are taken care of by the government through hospitalization may have little use for periodic benefits directed toward those same basic needs during the period of hospitalization. Benefits received on such a veteran's behalf could accumulate in his estate during his hospitalization, and if he dies while still hospitalized, the accumulated amounts would pass to his heirs without having benefited the veteran directly. Toward the end of preventing such accumulations, benefits are withheld from institutionalized incompetents.[3] Exception is made for veterans having wives or children, for the plain reasons that (1) accumulations are less likely where the hospitalized incompetent has nonhospitalized dependents currently in need of support, and (2) wives and children, being in the class of intended beneficiaries of veterans' benefits, are "acceptable" heirs of accumulated amounts.

Section 3203(b) (2) also reflects a recognition that, in spite of "hospital treatment, institutional or domiciliary care" furnished to an incompetent veteran, there may remain a need for income to meet certain current expenses and to satisfy antecedent debts. The size of the veteran's estate is used as in indication of such need. An estate of less than $1500, or, in the case of a veteran with an initial estate of more than $1500, a depletion of such estate to less than $500, are considered indicators that an immediate need for benefits exists. Conversely, an increase of an initially small estate to an amount greater than $1500 is viewed as evidence that continued benefits are not currently needed, and that an accumulation contrary to

---

2. The classifications complained of by the defendant can be found in predecessors of § 3203(b) (2) as far back as 1934. See U.S.C.A., 1942 ed., Title 38, ch. 12, Veterans' Reg. 6(a), para. VI(b).

3. If the institutionalized veteran is ultimately discharged, the amounts withheld under § 3203(b) (2) are paid to him as a lump sum. " . . . The amount which would be payable but for this paragraph (§ 3203(b) (2)) shall be paid to the veteran as provided for the lump sum in (§ 3203(a) (1)) of this subsec-

tion, but in the event of the veterans' death before payment of such lump sum no part thereof shall be payable."

Sec. 3203(a) (1) provides in part: "If such veteran is discharged from such treatment or care upon certification by the officer in charge of the hospital, institution, or home, that maximum benefits have been received or that release is approved, he shall be paid in a lump sum such additional amount as would equal the total sum by which his compensation or retirement pay has been reduced under this section."

the purpose of § 3203(b) (2) is taking place.

On the basis of the foregoing, I do not feel that it can be said that the classifications governing the operation of § 3203(b) (2) are "utterly lacking in rational justification." Clearly the classifications are "rationally related" to the purpose of Title 38 that veterans' benefits be paid only, as the term suggests, for the benefit of veterans. I find that the reclamation of veterans' benefits paid contra to 38 U.S.C. § 3203(b) (2) is not precluded by the Due Process Clause of the Fifth Amendment.[4]

As for the amount of the Government's claim, the court observes that the monthly payments alleged by the Government and admitted by the defendant add up to approximately the amount claimed, $19,280. Judgment will be entered in the amount of $19,280, without prejudice to the defendant's right to show that the addition of the Government and the court is incorrect, and without prejudice to the defendant's right to show that, at any time subsequent to December 9, 1965 and before May 31, 1969, the estate of Frank T. Rose was reduced to an amount less than $500.[5]

4. The court acknowledges a feature of Sec. 3203(b) (2) which in its practical application could result in the unequal treatment of incompetent institutionalized single veterans having equal estates. It will be observed that Sec. 3203(b) (2) withholds benefits from a veteran whose payments have been suspended pursuant to the section's provisions, and whose estate has subsequently been reduced to an amount less than $1500 but greater than the $500 reinstatement figure, whereas benefits are not withheld from a veteran whose estate has not exceeded $1500 so as to cause suspension, but whose estate is currently in the same $500–$1500 range.

Nevertheless, in view of the Government's representation that experience has shown that the estate of a veteran in the latter category normally increases quickly to an amount over $1500, and the fact, noted supra, fn. 3, that withheld benefits are paid as a lump sum in the event of discharge, I am not dissuaded, notwithstanding a small "inequity," from the conclusion that the classifications of Sec. 3203(b) (2) are rationally related to the achievement of legitimate goals.

5. The stipulation of facts establishes only that the estate of Frank T. Rose exceeded $1500 on December 9, 1965; any subsequent reduction of Rose's estate to $500 or less would have reinstated Rose's right to benefits, and would now cancel out a portion of the Government's claim. If such a reduction did occur, I leave it to the defendant to come forward with appropriate proof.