**Max ZIVIAK, Administrator,**

v.

**UNITED STATES of America.**

**Civ. A. No. 74–1062–F.**

United States District Court,
D. Massachusetts.

March 5, 1976.

---

Louis Kerlinsky, Springfield, Mass., for plaintiff.

Richard D. Glovsky, Asst. U. S. Atty., Boston, Mass., for defendant.

Before McENTEE, Circuit Judge, and SKINNER and FREEDMAN, District Judges.

## OPINION

FREEDMAN, District Judge.

This is an action in which the plaintiff seeks to have the Court declare unconstitutional subsection (b) of 38 U.S.C. § 3203, entitled "Hospitalized veterans and estates of incompetent institutionalized veterans," on the ground that it discriminates against parents of incompetent veterans. It is alleged that the section "prohibits parents of incompetent veterans from obtaining the benefits which would have been paid to them had their child died competent," thereby violating the Due Process Clause of the Fifth Amendment. It is further alleged that the interpretation of the section in question by the Veterans' Administration is erroneous in that it causes an unconstitutional effect. Plaintiff purports to represent a class consisting of all others similarly situated. He further asks the Court to grant plaintiff and the members of the purported class payment of all monies that would be due them had their children died competent, and costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. The convening of a three-judge district court, pursuant to 28 U.S.C. §§ 2282 and 2284, has also been requested by plaintiff. The matter is currently before the Court on defend-

ant's motion to dismiss and plaintiff's motion for summary judgment.

## Class Action

■ In addition to himself, plaintiff seeks to represent a class consisting of those parents of deceased incompetent veterans who would be entitled to veterans' benefits but for the language in 38 U.S.C. § 3203 dealing with survivors of such veterans. It is alleged that all the prerequisites necessary to maintain a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure are present. Pursuant to subsection (c)(1) of Rule 23, the Court determines and orders that this action is properly maintainable as a class action. The Court orders that plaintiff Ziviak may sue as a representative party on behalf of all surviving parents of deceased incompetent veterans who would be entitled to accumulated veterans' benefits but for the language in 38 U.S.C. § 3203 barring payment.

The Court finds that the class is so numerous that joinder of all members is impracticable, that there are questions of law or fact common to the class, that the claims of the representative party here are typical of the claims of the class he represents, and that the representative party will fairly and adequately protect the interests of the class. In addition, the Court finds that the opposing party has refused to act on grounds generally applicable to the class. That is, it has utilized the challenged statute in such a manner as to deny plaintiff payment of veterans' benefits to which he is allegedly entitled. The Court finds the class action to be maintainable under Rule 23(b)(2).

## Facts

The material facts do not appear to be at issue. Herbert Ziviak, a veteran, had died on January 9, 1972, while a patient in a Veterans' Administration hospital. The deceased had been rated incompetent by the Veterans' Administration since November, 1946, due to a service connected psychiatric disorder and had been hospitalized by the Veterans' Administration from 1946 until his death. Ziviak had never married and had no children. His father, Max Ziviak, the plaintiff in this case, is the sole surviving parent and had been classified as a needy dependent parent for the purpose of apportionment of benefits not paid his son while hospitalized. At the time of his death, Herbert Ziviak's estate exceeded $1,500.

Subsequent to his son's death, plaintiff applied for payment of the lump sum disability benefits that would have been payable to his son on account of his disability had he died while competent. This application was denied throughout the administrative process, culminating in a decision by the Board of Veterans Appeals dated January 30, 1974. That decision again denied benefits sought by plaintiff, finding that 38 U.S.C. § 3203 barred such payment. Plaintiff thereupon filed this suit on March 25, 1974. On April 18, 1974, a three-judge court was designated by order of the Chief Judge of the United States Court of Appeals for the First Circuit.

## Motion to Dismiss

Defendant's motion to dismiss is based on three grounds: that the Court lacks jurisdiction of the subject matter of the complaint; that the administrative ruling by the Veterans' Administration is not subject to judicial review; and that the complaint fails to state a claim upon which relief may be granted.

The Court denies summarily defendant's motion to dismiss for failure to state a claim upon which relief can be granted. The complaint presents a substantial federal question and is not considered frivolous.

■ The Court also denies dismissal on the ground that the administrative ruling is not subject to judicial review. In this assertion, defendant relies primarily on 38 U.S.C. § 211(a), which provides in pertinent part that

the decisions of the Administrator on any question of law or fact under any

law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

If defendant's argument were to be accepted, section 211(a) would in effect preclude the federal courts from passing on the constitutionality of veterans' benefits legislation. This position has been rejected, however, by the United States Supreme Court in *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Discussing the prohibition in section 211(a), the Court stated that those prohibitions

> would appear to be aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans. A decision of law or fact "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts.

415 U.S. at 367, 94 S.Ct. at 1166, 39 L.Ed.2d at 398 (emphasis by the Court). Noting that the plaintiff's constitutional challenge was not to a "decision of the *Administrator,*" but rather to a decision of *Congress* to create a statutory class," *Id.,* the Court agreed with the District Court that " 'The questions of law presented in these proceedings arise under the Constitution, not under the statute whose validity is challenged.' " *Id.* (quoting from *Johnson v. Robison,* 352 F.Supp. 848, 853 (D.Mass.1973)). The Court concluded that the prohibitions of section 211(a) do "not extend . . . to actions challenging the constitutionality of laws providing benefits for veterans." 415 U.S. at 373, 94 S.Ct. at 1169, 39 L.Ed.2d at 401.

As in *Robison,* the gravamen of the complaint in the instant case is the constitutionality of 38 U.S.C. § 3203. Section 211(a) cannot therefore act to bar access to judicial review by this Court.

The parties have filed a number of motions and supporting memoranda which relate to the question of subject matter jurisdiction in this case. Plaintiff's original complaint asserted jurisdiction pursuant to 28 U.S.C. §§ 2282 and 2284. Thereafter, plaintiff filed two motions to amend its complaint, asserting that the suit was also brought pursuant to 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. §§ 1331 and 1336, respectively. Both motions were allowed. Defendant's memoranda in support of its motion to dismiss challenge the ability of any of these statutes to confer jurisdiction. Subsequent to their filing, plaintiff moved to further amend his complaint in such a manner as to indicate that the suit was also being brought pursuant to 28 U.S.C. § 1346(a)(2), and that a previous motion to amend the complaint had inadvertently referred to 28 U.S.C. § 1336 instead of section 1346. Defendant thereupon filed opposition and a supporting memorandum to this recent amendment by plaintiff.

In order that the question of subject matter jurisdiction may be settled, the Court allows both parties to file all motions, oppositions to motions, and memoranda relating to subject matter jurisdiction that were offered subsequent to oral argument.

■ There appears to be a question as to what monetary amount plaintiff would be entitled to should he prevail in his suit. Plaintiff alleges that the amount in controversy is approximately $55,000.00, and therefore jurisdiction exists under 28 U.S.C. § 1331, which requires that the amount exceed the sum or value of $10,000.00. Defendant, on the other hand, asserts that, if successful in his case, plaintiff would be entitled only to $3,579.50. To arrive at this figure, defendant claims that 38 U.S.C. § 3021 is applicable in determining how much money plaintiff might be entitled to, and that by reason of that statute, plaintiff's recovery would be limited to the amount accumulated "for a period

not to exceed one year" prior to the veteran's death. Defendant then indicates, by way of an affidavit from the Adjudication Officer of the Veterans' Administration Regional Office in Boston, Massachusetts, that in the year prior to the death of plaintiff's son, the Veterans' Administration withheld from the son $3,579.50.

If section 3021 does apply to the situation in this case, plaintiff would apparently be precluded from bringing his suit pursuant to 28 U.S.C. § 1331. As plaintiff correctly points out in response to this argument, however, defendant did not fully quote the relevant portions of section 3021. That section provided in pertinent part, at the time of death of plaintiff's son:

(a) *Except as provided in section 3203(a)(2)(A) of this title* and sections 123–128 of title 31, periodic monetary benefits (other than insurance and servicemen's indemnity) under laws administered by the Veterans' Administration to which an individual was entitled at his death under existing ratings or decisions, or those based on evidence in the file at date of death . . . and due and unpaid for a period not to exceed one year, shall, upon the death of such individual be paid as follows:

. . . .

(2) Upon the death of a veteran, to the living person first listed below:

(A) His spouse;

(B) His children (in equal shares);

(C) His dependent parents (in equal shares);

. . . .

(Emphasis added).

In promulgating the above statute, Congress clearly indicated that section 3021 was not to apply to such benefits under section 3203(a)(2)(A).[1] That subsection, as will later be seen, sets forth the procedure by which unpaid benefits should be distributed "[i]n the event of the death of any veteran subject to the provisions of this section." A reading of subsection (b) of section 3203 indicates that payment of benefits to veterans covered by subsection (b) "shall be subject to the provisions of subsection (a) of this section." This Court is therefore of the opinion that it was the intent of Congress that section 3021 of Title 38 should not affect the distribution of benefits to any person entitled to them under either subsection (a) or (b) of section 3203. Since plaintiff has alleged that the amount of benefits accumulated for his son, but withheld due to his death, exceeds $10,000.00, plaintiff has asserted a proper basis for jurisdiction in his citing of 28 U.S.C. § 1331. It will therefore be unnecessary to examine the sufficiency of the other statutes under which jurisdiction has been alleged. The Court denies defendant's motion to dismiss on the ground that the Court lacks jurisdiction of the subject matter.

### Summary Judgment

Plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A review of the pleadings reveals that there is indeed no genuine issue as to any material facts, and therefore the matter is properly before the Court on plaintiff's motion.

The statute in question, 38 U.S.C. § 3203, sets out the procedure by which benefits are to be apportioned to veterans who are being cared for in institutions maintained by the Veterans' Administration. Since the death of plaintiff's son in January, 1972, that section has been revised by Pub.L. No. 92–328, § 104, which became effective August 1,

---

1. A search of the legislative history of section 3021 reveals no indication of the reason for the reference to section 3203(a)(2)(A). Section 3021 was amended in 1972 by Pub.L. No. 92–328, which deleted the portion excepting situations of distribution of benefits arising under section 3203(a)(2)(A). That amendment became effective August 1, 1972, several months after the death of Herbert Ziviak, and is not controlling in this case.

1972. While the section has remained essentially the same in its effect upon institutionalized veterans, it is of course the form in which the section existed at the time of plaintiff's son's death that is controlling in this case and which will be discussed below.

At the time plaintiff's son died in 1972, section 3203(a) provided that where such a veteran had neither a wife, child, nor dependent parent, compensation or retirement pay would continue unreduced for six months following admission, but that after that period only one half of the money, if in excess of $30.00 per month, would be paid to the veteran. Upon discharge he was to be paid a lump sum equivalent to the amount by which his benefits had been reduced, except that that lump sum would be withheld for six months if he had left against medical advice or because of disciplinary action. If the veteran died while he was institutionalized or before payment of the lump sum had been made, the money would be paid to either the surviving spouse, children, or dependent parents, in accordance with the priority set out in 3203(a)(2)(A).[2] If there were no such survivors, the only payments that would be made would be for expenses of burial or last sickness.

Having established the above criteria regarding apportionment of benefits, section 3203 then set out in subsection (b) somewhat different standards under which benefits would be apportioned in the case of institutionalized veterans who had been rated mentally incompetent.

That subsection provided:

(b)(1) Where any veteran having neither wife, child, nor dependent parent is being furnished hospital treatment, institutional or domiciliary care by the Veterans' Administration, and is rated by the Veterans' Administration in accordance with regulations as being incompetent by reason of mental illness, the pension, compensation, or retirement pay of such veteran shall be subject to the provisions of subsection (a) of this section; however, no payment of a lump sum herein authorized shall be made to the veteran until after the expiration of six months following a finding of competency and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

(2) In any case in which such an incompetent veteran having neither wife nor child is being furnished hospital treatment, institutional or domiciliary care without charge or otherwise by the United States, or any political subdivision thereof, and his estate from any source equals or exceeds $1,500, further payments of pension, compensation, or emergency officers' retirement pay shall not be made until the estate is reduced to $500. The amount which would be payable but for this paragraph shall be paid to the veteran as provided for the lump sum in paragraph (1) of this subsection, but in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

It is apparent from a reading of the various subsections of section 3203 already discussed that Congress chose to differentiate between survivors of mentally competent and mentally incompetent veterans, barring payment of the lump sum that had been accumulated to the survivors of an incompetent veteran who had died while still rated incompetent. It is this differentiation that plaintiff challenges as unconstitutional.

---

2. What appears to be an obvious conflict between the language restricting the application of the statute to veterans without wife, child, or dependent parents and the words directing the payment of the accumulated lump sum to a spouse, child, or dependent parent in the event of the veteran's death, is resolved by section 3203(c) which states that the veterans in question "shall be deemed to be single and without dependents in the absence of satisfactory evidence to the contrary," and by section 3203(a)(2)(B), which allows such survivors to file a claim for the lump sum up to five years after the veteran's death. For further discussion of this aspect of the statute see *Berkey v. United States*, 361 F.2d 983, 985, 176 Ct.Cl. 1 (1966).

It appears to be well settled that veterans have no vested right to receive Veterans' Administration benefits. Generally, the Supreme Court has stated:

Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress.

*Lynch v. United States*, 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434, 1439 (1934). Dealing specifically with veterans' benefits, the First Circuit has stated that such benefits are

gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under such conditions as Congress may impose.

*Milliken v. Gleason*, 332 F.2d 122, 123 (1st Cir. 1964), *cert. denied*, 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965). *See DeRodulfa v. United States*, 149 U.S. App.D.C. 154, 461 F.2d 1240, 1257, *cert. denied*, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); *Van Horne v. Hines*, 74 App.D.C. 214, 122 F.2d 207, 209, *cert. denied*, 314 U.S. 689, 62 S.Ct. 360, 86 L.Ed. 552 (1941); *Taylor v. United States*, 379 F.Supp. 642, 649 (W.D.Ark. 1974).

The fact that there exists no vested right to these benefits does not mean that the differentiation Congress has imposed escapes scrutiny under the Fifth Amendment. This principle was discussed in *United States v. Macioci*, 345 F.Supp. 325 (D.R.I.1972). In *Macioci*, the United States sought to recover overpayments of $19,280 in Veterans' Administration benefits from the guardian of an incompetent veteran. At the time of the veteran's admission to a veterans home, his estate exceeded $1,500. As a basis for its claim to recovery, the Government looked to section 3203(b)(2), which, as already seen, bars payment of benefits until the veteran's estate is reduced to $500. As one of its arguments defendant challenged the constitutionality of the section, arguing that the classifications established by that section were arbitrary and capricious and that withholding of benefits in the case would be a deprivation of property without due process of law. The court rejected these arguments. Following the established principle that veterans' benefits are gratuitous and recipients have no vested right to them, it went on to state:

The fact that payments made pursuant to an Act of Congress are characterized as "gratuitous" does not totally immunize the Act from scrutiny under the Fifth Amendment. The interest of a recipient of such payments is "of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause."

345 F.Supp. at 327 (quoting from *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). As the court in *Macioci* correctly stated, however, the scope of protection is limited. In this regard it quoted portions of two cases which are most pertinent:

"Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program . . . ., we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

*Flemming v. Nestor, supra*, 363 U.S. at 611, 80 S.Ct. at 1373 [4 L.Ed.2d at 1444].

"If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment."

*Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

345 F.Supp. at 327–28.

While *Macioci* does not deal with the same issues as are present in the instant case, it does shed light on the constitu-

tionality of section 3203 in general. Its relatively brief discussion of the purposes of Title 38 and their relation to the classifications created in section 3203 reveal several conclusions. The court felt that an obvious purpose of Title 38 is that benefits authorized therein are to be provided to needy veterans and their immediate dependents; and that "[a] corollary of this purpose is that compensation should not be paid where there is little likelihood that it will ultimately benefit an eligible veteran or his dependents." The court went on to reason:

> Section 3203(b)(2) envisions such a situation; it recognizes that an incompetent veteran whose basic needs are taken care of by the government through hospitalization may have little use for periodic benefits directed toward those same needs during the period of hospitalization. Benefits received on such a veteran's behalf could accumulate in his estate during his hospitalization, and if he dies while still hospitalized, the accumulated amounts would pass to his heirs without having benefited the veteran directly.

345 F.Supp. at 328.

After a review of the general purposes of Title 38, as they related to withholding of benefits under section 3203(b)(2), the court in *Macioci* concluded:

> Clearly the classifications are "rationally related" to the purpose of Title 38 that veterans' benefits be paid only, as the term suggests, for the benefit of veterans. I find that the reclamation of veterans' benefits paid contra to 38 U.S.C. § 3203(b)(2) is not precluded by the Due Process Clause of the Fifth Amendment.

345 F.Supp. at 329 (footnote omitted).

What relevant legislative history exists relating to the general intent of Congress in its wording of section 3203(b) is found in reference to Pub.L. No. 86–146, 73 Stat. 297, which in 1959 amended subsection (b) so as to be worded as it was at the time of Herbert Ziviak's death. That act added to subsection (b) the portion "in the event of the veteran's death before payment of such lump sum no part thereof shall be payable." Senate Report No. 344, June 5, 1959, U.S.Code Cong. & Admin.News, 1959, p. 2048, discussing the bill which became Pub.L. No. 86–146, states that the purpose of the bill was

> to prevent gratuitous benefits for incompetent veterans receiving care at public expense from accumulating in excessive amounts and passing upon the death of the veteran to relatives having no claim against the Government on account of the veteran's military service.

An examination of Pub.L. No. 86–146 reveals that it not only amended section 3203, but also revised section 3202, a statute that deals with payments of benefits to guardians of incompetent veterans. In that regard, section 3202(d) was amended so as to provide for payment, upon death of the incompetent veteran, of gratuitous benefits withheld from such guardian for reasons set forth in the section, not to the guardian or representative but to the surviving spouse, children, or parents. With this in mind, the stated purpose of the bill is more clearly understood. Congress was aware of the necessity of caring for incompetent veterans and their dependents, yet concerned with the possibility that benefits might pass to persons other than the veteran or immediate dependent, thereby defeating the major purpose of Title 38. In this regard, it created specific procedures by which such benefits would be distributed. Congress was not unmindful, in its enactment of section 3203, of the occasional need to provide for dependent parents of incompetent veterans, the class with which this case is concerned. At the time of Herbert Ziviak's death, 38 U.S.C. § 3203(b)(3) stated in pertinent part:

> Where any benefit is discontinued by reason of paragraph (2) of this subsection the Administrator may nevertheless apportion and pay to the dependent parents of the veteran on the basis of need all or any part of the benefit which would otherwise be pay-

able to or for such incompetent veteran.[3]

It is thus apparent that, while the statute regulates the distribution of accumulated veterans' benefits, it does allow dependent parents to receive funds in appropriate situations.

In his argument, plaintiff relies heavily on the reasoning in *Berkey v. United States*, 361 F.2d 983, 176 Ct.Cl. 1 (1966). While that case did deal with section 3203(b)(2), and the court did allow the plaintiff to recover, the facts and reasoning were of such a nature that they cannot be considered persuasive in this case. In *Berkey*, the plaintiff was the only child of a retired army veteran. The father had entered a Veterans' Administration hospital in 1947 as an adjudicated incompetent and had died there in 1962. Plaintiff thereupon made claim for the army retirement pay that his father had accumulated while in the hospital, but which had been withheld pursuant to section 3203. The Court of Claims allowed plaintiff to recover. Distinguishing between gratuitous benefits and earned benefits, such as the retirement pay involved in that case, the court reasoned:

> Since the Congress was so wholly concerned with gratuitous benefits and with cutting off collateral relatives from such grants, we do not believe that it also intended to bar the immediate family ·from accumulated retirement pay.

361 F.2d at 989–90. The court in *Berkey*, however, was careful to point out that it was not expressing any opinion as to payment of gratuitous benefits of incompetent veterans barred by the statute. *Id.* at 989, n.15. Before giving an extensive discussion of the legislative history of the statute, the court made it clear that it was concerned "only with accumulated retirement pay, not with other types of veterans' benefits, and we look to the history of ·these provisions with that type of payment specially in mind." *Id.* at 986. Thus, the court in

*Berkey* dealt with a limited aspect of veterans' benefits under section 3203(b)(2) and thereby did not reach the question of that section's constitutionality.

The Supreme Court, reiterating its statement in *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920), has recently stated:

> "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989, 990] (1920)."

*Johnson v. Robison, supra*, 415 U.S. at 374–75, 94 S.Ct. at 1169, 39 L.Ed.2d at 402 (quoting from *Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225, 229 (1971)).

The classifications of section 3203(b) sufficiently meet the above test. In that section Congress manifested its intent to regulate the accumulation and distribution of benefits relating to incompetent veterans. At the same time, however, it authorized the Administrator to order payment of all or part of the withheld benefits "to the chief officer of the institution" for treatment or care of the veteran (38 U.S.C. § 3203(b)(4)) and to dependent parents on the basis of need (Id. § 3203(b)(3)).

Defendant has presented data in support of an argument that incompetent veterans suffer longer periods of institutionalization than do competent veterans, thereby causing the accumulation of more funds in their behalf than for competents who are institutionalized. This, defendant contends, serves to justify the differentiation in treatment under section 3203(b) of parents of incompetent veterans and those of competent veterans. Congress' barring of payment of such accumulated sums to someone other than the institutionalized incompetent

---

3. This provision still exists in the statute as it is presently worded, now being found in subsection (b)(2).

upon his death, defendant argues, is justified by the fact that it enables the Government to recover excessive amounts of funds which have never benefitted the incompetent, yet would otherwise be paid to his heirs.

A search of the legislative history of the statute in question reveals no discussion of longer periods of institutionalization suffered by incompetent veterans as defendant here suggests. In its explanation of the bill which became the law amending section 3203 in 1959, Senate Report No. 344 makes brief mention of the substantial savings that would result from the enactment of the bill. While this does not specifically acknowledge a disparity in periods of institutionalization of competents and incompetents, the Court feels a sufficient inference exists that Congress was aware of the disparity and that the denial of payments of accumulated funds to parents of deceased incompetents was motivated by a concern for fiscal integrity.

It has been recognized that "Congress has great latitude in making statutory classifications in social and economic legislation," and that "[a] statutory discrimination will not be set aside as violative of equal protection or due process if any state of facts reasonably may be conceived to justify it." *United States v. Weatherford*, 471 F.2d 47, 51 (7th Cir. 1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973). The cases that have dealt with the relation between attempts at conservation of governmental finances and the creation of statutory classifications appear to be in agreement that, although the Government may attempt to conserve its fisc, it may not do so by drawing invidious classifications: *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 263, 94 S.Ct. 1076, 1084, 39 L.Ed.2d 306, 317 (1974); *Shapiro v. Thompson*, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600, 614 (1969); *Miller v. Laird*, 349 F.Supp. 1034, 1046 (D.D.C.1972).

▆ Here the Court does not feel that the disparity in treatment between the parents of deceased competent veterans and parents of deceased incompetent veterans, apparently motivated by Congress' desire to conserve the Government's finances, is of the nature that would require the setting aside of the statutory classifications in section 3203(b). Based on the case law and the legislative history that exists, it cannot be said that the classifications found within section 3203(b) can be considered "utterly lacking in rational justification." *Flemming v. Nestor, supra.* They bear a rational relationship to the objectives of Title 38 and section 3203, that of providing benefits to the needy veteran and his immediate dependents. The Court finds that the statutory classifications are not invidiously discriminatory and that the barring of payments to parents of deceased incompetent veterans under 38 U.S.C. § 3203(b) is not violative of the Due Process Clause of the Fifth Amendment.

In view of the above determination, the Court cannot agree with plaintiff's allegation that the Veterans' Administration interpretation of section 3203(b) is erroneous in that it causes an unconstitutional effect. The decision of the Board of Veterans Appeals reveals an understanding of the statute and its proper application to plaintiff's case.

In light of the facts and law presented, it would appear that defendant would be entitled to a grant of summary judgment. This case, however, is before this Court on plaintiff's motion for summary judgment. While no cross-motion has been filed by defendant, the great weight of authority supports the power of this Court to grant summary judgment to a non-moving party if it is clear that the case warrants that result. *See* 6 J. Moore, Federal Practice Par. 56.12 (2d ed. 1971). Since in this case there are no material issues to be tried and plaintiff has had a fair opportunity to present all relevant legal propositions, nothing would now be gained by requiring defendant to file a formal motion.

Accordingly, the Court ORDERS that summary judgment be granted to defendant.