April 7, 1978

## 78-93 MEMORANDUM FOR THE COUNSEL TO THE PRESIDENT

### Veterans—Benefits—Effect of Upgraded Discharges (38 U.S.C.A. 3103)

This memorandum supplements our March 14, 1978, memorandum to you regarding implementation of Pub. L. 95-126, 91 Stat. 1106 (1977), 38 U.S.C.A. 3103 (1979), which deals with receipt of veterans' benefits by persons who obtained upgraded discharges. In that memorandum, we concluded that there is one substantial constitutional issue raised by the statute. At a March 22 meeting,[1] a second constitutional question, involving the effect of this statute on Veterans Administration (VA) loan guaranties, was raised.[2] We were asked to consider whether the operation of the new law, insofar as it has retroactive consequences, might violate notions of due process under the Fifth Amendment. Our conclusion is that the drafters of Pub. L. 95-126 did not intend to alter the obligations of the Veterans Administration that took effect before October 8, 1977, the date the statute was enacted, and that therefore no serious constitutional issue arises. The VA should take appropriate steps to guard against issuance of a guaranty on behalf of a veteran whose eligibility for VA benefits was terminated by Pub. L. 95-126.[3]

1. Section 5 of Pub. L. 95-126 sets forth the schedule for the implementation of its various provisions. For example, with regard to a person whose original discharge was within one of the barred categories of 38 U.S.C.A. § 3102(a) (1976) and who obtained an upgraded discharge through the Special Program, the termination of VA benefits took effect on October 8, 1977, when Pub. L. 95-126 was enacted. However, § 5(2) (B), which is applicable to such

---

[1]On March 22, our Office discussed this matter with members of President Carter's staff and personnel from the Veterans Administration.

[2]The Veterans Administration has not determined the number of persons whose discharges were upgraded through the Special Program who have received a certificate of eligibility for a VA-guaranteed loan.

[3]A recent VA circular, DVB Circular 20-78-18 (March 24, 1978), para. 11, indicates that such steps are to be taken, after a final determination of ineligibility has been made by the VA Adjudication Division.

persons, states that "the United States shall not make any claim to recover the value of any [VA] benefits . . . provided [before October 8, 1977]."

Different effective-date provisions apply with regard to persons whose original discharges were not within a barred category. With respect to those individuals who obtained upgraded discharges through the Special Program and who, on October 8, 1977, were "receiving [VA] benefits," § 5(2) (A) (i) provides that such benefits shall not be terminated until (1) the day when a final adverse "second determination" is made, (2) 90 days after a preliminary adverse "second determination," or (3) April 7, 1978, whichever is earliest.[4] Section 5(2) (A) (ii) states that the United States shall make no claim to recover the value of VA benefits provided before such earliest day.

2. Regarding VA benefits that are in the form of payments of money, application of the foregoing provisions is relatively clear. Less clear, however, is their application to loan guaranties. With respect to a loan guaranty, the questions become what is the "benefit" to the veteran and at what stage has the benefit been "received" or "provided." A veteran who makes a request for a loan guaranty, will, if he is found to be eligible, receive from the VA a certificate of eligibility. He may then submit that certificate to a lender. After a loan is closed, the VA issues a certificate of guaranty. Such a certificate is, by virtue of 38 U.S.C. § 1821 (1976), "conclusive evidence of the eligibility of the loan for guaranty . . ." and, absent fraud or material misrepresentation, the VA is bound by the certificate.

It might be asserted that a person who obtained a certificate of eligibility, at that point, "received" a "benefit" within the meaning of § 5 of Pub. L. 95-126. In our view, a more sound interpretation is that there is no such "benefit" until a loan has been closed and a certificate of guaranty has been issued. In the latter situation, the rights and obligations of the parties have become fixed. In contrast, a certificate of eligibility would seem merely to represent a potential benefit.

Our interpretation is consistent with the legislative history of Pub. L. 95-126. Our review of that history revealed only one statement concerned with the effect on loan guaranties. During the debate on the bill initially passed by the Senate, the Chairman of the Veterans' Affairs Committee said:[5]

> I also wish to make clear . . . that there is no intent in this legislation to diminish the Government's obligations—incurred prior to the date of enactment in the cases of persons whose discharges were previously upgraded under the special program—under such provisions as the home-loan guaranty program under chapter 37 of title 38, United States Code.

---

[4]No such grace period is provided, however, for persons whose discharges were upgraded through the Special Program, but who were not receiving VA benefits on October 8, 1977.

[5]123 Cong. Rec. S. 28196 (Sept. 8, 1977).

If the Government's obligations are "incurred" when a certificate of guaranty has been issued, it seems clear that there was no intent in the legislation to disrupt the operation of that guaranty.

The next issue relates to the manner in which the statute, as we construe it, should be applied by the VA.[6] Any certificate of guaranty issued before October 8, 1977, to a person upgraded through the Special Program should not be affected.[7] Significantly different is the situation in which a veteran (whose discharge was upgraded through the Special Program) obtained a certificate before October 8, 1977, but not a guaranteed loan. Under our reading of § 5, such a person had not received a "benefit" by October 8. Accordingly, the proper course for the VA is to revoke such certificate of eligibility.[8]

Another possible category would be that of the individual (who went through the Special Program) who obtained a VA-guaranteed loan *after* October 8, 1977. Since we do not have evidence today that there are persons in this situation, we need not decide what the proper course for the VA would be. If, however, this situation is found to exist, we have serious doubts about whether the VA should attempt to cancel the guaranty. There would, of course, be a problem of apparent inconsistency with Pub. L. 95-126 if such guaranties have been granted. Nonetheless, an effort by the VA to cancel such a guaranty would run directly counter to the incontestability provision, 38 U.S.C. 1821 (1976), and such action might have serious ramifications for the entire guaranty program. Also there is the possibility that continuing the guaranty may never result in a monetary loss for the Government.[9]

Thus, Pub. L. 95-126, as we interpret it, does not call for alteration of fixed obligations of the VA with respect to loan guaranties. Therefore, constitutional issues which might otherwise arise[10] are not presented.

3. With respect to the constitutionality of Pub. L. 95-126 as it affects VA benefits generally, we adhere to the views expressed in our March 14 memorandum. As shown by the facts alleged in the *Furnish* case, which is the pending case discussed in our earlier memorandum, denial of VA educational assistance to persons who relied on receipt of such assistance can result in substantial hardship.[11] Nonetheless, we do not think that the existence of such hardships renders the statute unconstitutional.

---

[6]*See* DVB Circular 20-78-18 (March 24, 1978), para. 11.

[7]In this respect, there would be no distinction between persons covered by the barred categories and other (nonbarred) veterans.

[8]There would, of course, be no such revocation if the veteran had received a favorable "second determination."

[9]The guaranty comes into play only in the event of a default by the veteran. Even then, to the extent of any amount paid on the guaranty, the VA is subrogated to the rights of the holder of the obligation. 38 U.S.C. 1816 (1976).

[10]*See, Lynch* v. *United States,* 292 U.S. 571, 579-80 (1934) (statute abrogating contractual obligations of the United States regarding war risk insurance held unconstitutional).

[11]For some persons whose "second determination" is favorable, the award of educational assistance will be retroactive to the date of their application for benefits. A veteran receiving benefits on April 7, 1978, who later receives a favorable second determination would have the benefits restored back to April 7. *See* DVB Circular 20-78-18, para. 15. f.

Pertinent cases indicate that Congress has broad power to modify or to withdraw such benefits. *Cf., Flemming* v. *Nestor,* 363 U.S. 603 (1960) (social security old-age benefits); *Richardson* v. *Belcher,* 404 U.S. 78, 80-81 (1971) (social security disability benefits); *Ziviak* v. *United States,* 411 F. Supp. 416, 422 (D. Mass.) *aff'd mem.,* 429 U.S. 801 (1976) (VA benefits for survivors).[12] Here, Congress has not required the recovery of benefits as provided in the past. Congress reviewed the actions of the Department of Defense and the VA relating to eligibility for VA benefits and determined that different standards and procedures should be used in regard to upgrading of discharges. As a result, many persons have lost or will lose entitlement to such benefits. However, there does not appear to be a proper basis for holding that Congress lacks the power to impose such changes.

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[12]In *Ziviak* v. *United States, supra,* 411 F. Supp. at 422, the district court said:

> It appears to be well settled that veterans have no vested right to receive Veterans' Administration benefits. Generally, the Supreme Court stated:
>
>> Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress.
>
> *Lynch* v. *United States,* 292 U.S. 571, 577, 54 S. Ct. 840, 842, 78 L. Ed. 1434, 1439 (1934).